JUDGE KARAS UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 3722

---

ROBERT COLUCCIO,

Plaintiff,

- against -

ENTERASYS NETWORKS, INC.,

Defendant.

CIVIL ACTION NO. _____

MAY 1 0 2007

## NOTICE OF REMOVAL OF CIVIL ACTION
## FROM STATE COURT TO THE UNITED STATES DISTRICT COURT

Defendant Enterasys Networks, Inc., through its undersigned attorney,

hereby files this Notice of Removal, pursuant to 28 U.S.C. §§ 1441 and 1446, to remove

the above-captioned action, now pending in the Supreme Court of the State of New

York, County of New York.  As grounds for the removal, Defendant states as follows:

1.    This action was commenced in the Supreme Court of the State of

New York, as Index No. 105247/2007, on or about April 18, 2007.  The Verified

Complaint and summons were served upon Defendant on April 20, 2007.

2.    This action is a civil action brought by Plaintiff Robert Coluccio in

which he seeks to recover money damages under state law claims of breach of contract

and breach of an implied covenant of good faith and fair dealing.  Plaintiff's Executive

Severance Pay Plan is governed by ERISA.

3.    The action is one over which this Court has original jurisdiction

under the provisions of 28 U.S.C. § 1332 and is one which may be removed to the

District Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b), in that it

is a civil action between citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

NYDOCS1-860808.1

4.    Plaintiff, Robert Coluccio, alleges that he resides at 15 Cornell Court, Freehold, New Jersey.

5.    Defendant, Enterasys Networks, Inc., is a Delaware corporation with its principal place of business at 50 Minuteman Road, Andover, Massachusetts, with other offices worldwide.

6.    Plaintiff is seeking damages in the amount of $80,000.

7.    This Notice is filed within thirty (30) days after Defendant Enterasys, Inc. received copies of the summons and complaint.

8.    Copies of all process, pleadings, and orders served by and upon Defendant in the state court action are attached and filed herewith as Exhibit A.

WHEREFORE, Defendant gives notice that this action is removed from the Supreme Court of the State of New York, County of New York, to this Court.

ENTERASYS NETWORKS, INC.

By its attorneys,

Mark L. Weyman (MW 6043)
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

OF COUNSEL:
Jonathan R. Sigel, Esq., BBO# 559850
*Motion for admission pro hac vice to be filed*
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 926-3434

Dated: May 10, 2007

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 105247/207
Dated Filed: 4/18/207
Plaintiff designates
NEW YORK County as
the place of trial

---------------------------------------------------------------

ROBERT COLUCCIO,

                                  Plaintiff,

      -against-

The basis of venue
is Defendant's
place of business

**SUMMONS**

ENTERASYS NETWORKS, INC.,

                        Defendant.

---------------------------------------------------------------

To the above named Defendant

     **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your Answer, or, if the Verified Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiff's attorney(s) within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
     April 16, 2007

Defendant's address:

Enterasys:
c/o CT Corporation System
111 Eighth Avenue, NY, NY 10011

                     THE COCHRAN FIRM
                    Attorney for Plaintiff

              By:
                    JOSEPH S. ROSATO
                    233 Broadway
                    New York, New York 10279
                    (212) 553-9215

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X

ROBERT COLUCCIO

                Plaintiff,

       -against-

ENTERASYS NETWORKS, INC.,

                Defendant.

-----------------------------------------------------------------------X

Index No. _105247/20͞7_

**VERIFIED
COMPLAINT**

**DATE FILED** _4/18/20͞7_

Plaintiff ROBERT COLUCCIO, by his attorneys, THE COCHRAN FIRM, as and for a Verified Complaint herein, respectfully sets forth and alleges, that:

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ROBERT COLUCCIO

1.   At all relevant times, defendant ENTERASYS NETWORKS, INC. (hereinafter "ENTERASYS") was a domestic corporation duly existing under and by virtue of the laws of the State of New York.

2.   At all relevant times, defendant ENTERASYS was a foreign corporation authorized to do business in the State of New York.

3.   At all relevant times, defendant ENTERASYS was doing business in the State of New York.

4.   At all relevant times, defendant ENTERASYS had an office for the transaction of business within the County of New York.

5.   On or about June 11, 2004, plaintiff ROBERT COLUCCIO and defendant ENTERASYS, through its duly constituted agent, entered into a contract in writing wherein and whereby plaintiff, among other things, agreed to provide employment services with

ENTERASYS in the position of Regional Director (hereinafter "Contract"). Annexed as Exhibit "1" is a complete copy of the Contract incorporated herein by reference.

6. The Contract provided that plaintiff begin employment as a Regional Director of Sales on July 6, 2004 at defendant's New York, New York office with a starting compensation salary bi-weekly rate of $6,153.84 equivalent to an annual rate of $160,000.00.

7. On or about July 6, 2004, plaintiff began employment with defendant ENTERASYS in accordance with the Contract.

8. As Regional Director of Sales employed with defendant ENTERASYS, plaintiff was provided with and was entitled to benefits provided in accordance with the ENTERASYS Executive Severance Pay plan, as amended November 5, 2003 (hereinafter the "Plan"). A copy of the Plan is annexed hereto as Exhibit "2" and incorporated herein by reference.

9. On or about January 24, 2006, plaintiff ROBERT COLUCCIO's employment was terminated by defendant ENTERASYS.

10. On or about January 24, 2006, plaintiff ROBERT COLUCCIO's employment was terminated without cause by defendant ENTERASYS.

11. Pursuant to letter dated February 8, 2006, plaintiff ROBERT COLUCCIO made due demand upon defendant ENTERASYS for various benefits provided to directors under the Plan for, amongst other benefits, six (6) months severance pay pursuant to Section V.A.1 of The Plan.

12. Defendant ENTERASYS failed to provide plaintiff ROBERT COLUCCIO with the benefits to which he is entitled under the Plan.

13. By reason of all the foregoing, plaintiff ROBERT COLUCCIO has been damaged in the amount of not less than Eighty Thousand Dollars ($80,000.00).

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF, ROBERT COLUCCIO

14.  Plaintiff repeats and reiterates each of the allegations sets forth in the First Cause of Action as if fully set forth at length herein.

15.  Defendant ENTERASYS' termination of plaintiff's employment was unjustified, wrongful, retaliatory and discriminatory.

16.  Defendant ENTERASYS entered into the Contract with an implied covenant of good faith and fair dealing.

17.  By virtue of defendant ENTERAYS' unjustified wrongful, retaliatory and discriminatory conduct and termination of plaintiff's employment, without just cause, as well as its failure to provide benefits in accordance with the Plan, defendant ENTERASYS wrongfully breached its obligation to treat plaintiff fairly and in good faith.

18.  As a direct and proximate result of defendant ENTERASYS' breach of the covenant of good faith and fair dealing, plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

19.  As a result of the foregoing, ROBERT COLUCCIO has been damaged in an amount exceeding the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

WHEREFORE, plaintiff ROBERT COLUCCIO demands judgment against the defendant ENTERASYS on the First Cause of Action in the amount of not less than Eighty Thousand Dollars ($80,000.00); on the Second Cause of Action in an amount exceeding the jurisdictional

limits of all lower courts that would otherwise have jurisdiction over this matter, plus interest and attorneys fees from the date of wrongful termination.

Dated: New York, New York
        April 16, 2007

                                                Yours etc.,

                                                The Cochran Firm
                                                Attorneys for the Plaintiff

                                                JOSEPH S. ROSATO
                                                233 Broadway, 5th Floor
                                                New York, NY 10279
                                                (212) 553-9215

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
                            ).SS:
COUNTY OF NEW YORK )

I, the undersigned, am an attorney admitted to practice in the Courts of the State of New York, and say that:

I am an attorney associated with the law firm of THE COCHRAN FIRM, attorneys for the plaintiff. I have read the annexed **COMPLAINT** and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following: investigation, interviews with client, records, reports, documents, correspondence, data, memoranda, etc., contained in the file.

The reason I make this verification instead of plaintiff, is that the plaintiff reside out of the County of New York, wherein I maintain my offices.

I affirm that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
        April 16, 2007

JOSEPH S. ROSATO




Networks that Know

June 11, 2004

Robert Coluccio
15 Cornell Court
Freehold, NJ 07728
732-241-9387

Dear Bob,

It is my pleasure to offer you the position of Regional Director, Sales with Enterasys beginning on Tuesday, July 6, 2004 at our New York, NY office. We offer you a starting compensation at the bi-weekly rate of $6,153.84 (equivalent to an annual rate of $160,000.00). You have a three (3) month, seventy-five percent (75%) non-recoverable draw with a total target compensation of $275,000.00, which is recoverable if you voluntarily terminate your employment or are released for cause within 12 months.

After you join Enterasys, a proposal will be submitted to the Board of Directors requesting approval to grant you an option to purchase 28,500 shares of Enterasys common stock (the "Option"). The option exercise price will be the fair market value in effect when the Option grant is approved by the Board. The options will be issued under a written agreement and will be subject to compliance with all applicable securities regulation. As long as you remain at Enterasys, 25 percent of your options will be exercisable one year following your date of hire and 2.08 percent monthly thereafter, subject to Enterasys 1998 Equity Incentive Plan. You should consult your personal tax advisor if you have questions regarding the stock option grant.

Please review, complete and return all documents included in your offer packet along with one copy of your signed offer letter to the Client Services Group at 50 Minuteman Road, Andover, MA 01810 *PRIOR TO START DATE*, or by FAX at 978-684-1184. Your employment will be contingent upon verification of your credentials and employment history.

This offer remains open until Wednesday, June 16, 2004, so please contact me by then to confirm your acceptance or discuss any questions you may have. We look forward to having you on the Enterasys Team!

Sincerely,

Jeff Gheraldi
Vice President, Sales for the Americas
908-907-2101

SIGNATURE: Your signature below indicates your acceptance of this offer and your agreement to abide by the terms and conditions herein.

_____                                   _____
Robert Coluccio                                                              Date

Tentative start date

**entera**sys   *Corporate Intranet Confidential*                    [        Go ]

Products and Solutions    Groups    Benefits    Forms and Policies    Utilities

You are Here: Human Resources > Policies, Procedures & Processes > Executive Severance Pay Plan

# Executive Severance Pay Plan

**Amended November 5, 2003**

## I. PURPOSE

This Plan is intended to provide benefits to certain designated Executives of Enterasys Networks, Inc. ("Enterasys") and the Subsidiaries, as hereafter defined, (together with Enterasys, the "Company") who become unemployed as a result of a Qualifying Termination, as described below.

## II. ELIGIBILITY TO PARTICIPATE

In order to be eligible to be a participant in this Plan (a "Participant"), an individual must be an employee of Enterasys or one of the Subsidiaries (his/her "Enterasys Employer") who is regularly assigned to a worksite within the United States; who is employed in a position with the title of director, vice president, senior vice president, executive vice president, president or chief executive officer who is currently designated, in writing, by the Chief Executive Officer of Enterasys or his designee as an "Executive" for purposes of this Plan; and who has a Qualifying Termination. Under no circumstances will any other individual be considered a Participant.

## III. QUALIFYING EVENTS

A termination of employment is a Qualifying Termination only if all of the following requirements are met:

    A.  the Executive is on the active payroll of his/her Enterasys Employer or is on an approved leave of absence with guaranteed reinstatement at the time employment terminates; and

    B.  the Executive's employment is terminated other than for "Cause" (as hereafter defined) by his/her Enterasys Employer or the Executive's employment is terminated by mutual agreement, evidenced by a writing signed by the Executive and an authorized representative of his/her Enterasys Employer, and, in either case, the Executive is not offered other employment in a position with a title equivalent to or higher than that which he/she held with his/her Enterasys Employer immediately prior to termination of his/her employment, and does not accept employment in any position, with (1) Enterasys or one of the Affiliates, (2) a successor of Enterasys or one of the Affiliates (a "Successor"), (3) a purchaser of some or all of the assets of Enterasys or any of the Affiliates (a "Purchaser") or (4) an Associated Employer, as hereafter defined; and

    C.  the Executive continues employment until the termination date designated by his/her Enterasys Employer, as such date may be extended from time to time by his/her Enterasys Employer, in its sole discretion and, during the period from the date the Executive receives notice of termination until the termination date, the Executive does not give Cause for termination; and

    D.  the Executive executes a separation agreement and release of claims in the form provided by Enterasys (the "Separation Agreement and Release") within forty five (45) days of the date on which the Executive receives notice of termination of his or her employment or receives a copy of the Separation Agreement and Release, whichever is later, and, having signed the Separation Agreement and Release, the Executive does not timely revoke it; and

    E.  the Executive fulfills all of his or her obligations to Enterasys and the Affiliates under the Separation Agreement and Release, all of his or her obligations to Enterasys and the Affiliates with respect to confidential information, inventions, non-competition, non-solicitation of customers and employees and the

like and such other obligations as may from time to time be required by Enterasys or his/her Enterasys Employer.

# IV. EXCLUSIONS

The following are examples of events which would not be a Qualifying Termination under this Plan. This is not an exclusive list.

A.   The Executive resigns, retires or otherwise voluntarily leaves his or her employment with his/her Enterasys Employer; or

B.   the Executive's employment is terminated by his/her Enterasys Employer for Cause; or

C.   the Executive's employment ends as a result of death or failure to return from a leave of absence; or

D.   the Executive is offered employment with Enterasys or one of the Affiliates, a Successor, a Purchaser or an Associated Employer in a position with a title equivalent to or higher than that which he/she held immediately prior to termination of his/her employment with his/her Enterasys Employer and such offer is made at or about the time the Executive's employment with his/her Enterasys Employer terminates; or

E.   the Executive accepts employment, in any position, with Enterasys, one of the Affiliates, a Successor, a Purchaser or an Associated Employer at or about the time the Executive's employment with his/her Enterasys Employer terminates; or

F.   the Executive elects not to execute the Separation Agreement and Release or, having executed it, revokes it in a timely manner thereafter.

# V. BENEFITS UNDER THE PLAN

Benefits under this Plan are as described below:

## A.   SEVERANCE PAY

A Participant will be entitled to severance pay as follows:

1. Based on his/her position at the time of a Qualifying Termination, the Participant will receive (a) six months' severance pay, if a director; or (b) nine months' severance pay, if a vice president or senior vice president; or (c) twelve months' severance pay, if an executive vice president, president or chief executive officer.

2. In addition to the foregoing, (a) the Participant will receive one months' severance pay, if the Participant has at least five years, but less than ten years, of service with the Company at the time his/her employment terminates; or (b) the Participant will receive three months' severance pay, if the Participant has ten or more years of service with the Company at the time his/her employment terminates.

One month's severance pay is equal to one-twelfth of a Participant's base salary at the annual rate in effect at the time termination occurs.

For the purpose of this Plan, years of service means the total number of consecutive completed years of service with the Company from the Participant's most recent date of hire.

Benefits payable to the Participant under this Section V.A. shall be reduced by all taxes and other amounts which are required to be withheld under applicable law and shall be payable as salary continuation at his/her Enterasys Employer's regular payroll periods and in accordance with its regular payroll practices, commencing on the next regular payday which is at least five days following the latest of the (i) effective date of the Separation Agreement and Release, (ii) the date the Separation Agreement and Release is received by the Human Resources Department of Enterasys or the date the Participant have satisfied his/her obligations to return Company, but the first payment shall be retroactive to the date immediately following the date of termination of the Participant's employment. Enterasys, on its own behalf and that of the

Subsidiaries, reserves the right in its sole discretion to provide severance pay benefits under an alternative payment schedule.

B.  **MEDICAL AND DENTAL BENEFITS**

Provided that the Participant is eligible to continue his/her participation, and that of his/her eligible dependents, in the group health and dental plans of his/her Enterasys Employer under the federal law known as "COBRA" and exercises his or her right to do so in a timely manner, then, for the period in which the Participant is receiving severance pay in accordance with the terms of this Plan or, if less, until the date the Participant becomes eligible for coverage under the group health plan of a new employer, his/her Enterasys Employer will continue to pay that share of the premium cost of the participation of the Participant and his/her eligible dependents under its group health and dental plans that his/her Enterasys Employer pays for its active employees and their eligible dependents generally. In the event that Enterasys, on its own behalf and that of the Subsidiaries, exercises its discretion to provide severance pay benefits under Section V.A., above, in a single lump sum, however, then the Participant, in order to be eligible for contributions from his/her Enterasys Employer toward the premium cost of group health and dental plan participation hereunder, must agree to have withheld from such lump sum an amount equal to the product of (i) the amount of the monthly employee contribution to the premium cost of such participation multiplied by (ii) the number of months of severance pay to which the Participant is entitled under this Plan. In that event, and if the Participant ceases to be eligible for premium contributions from his/her Enterasys Employer hereunder prior to the end of the period set forth in clause (ii) of this Section V.B and promptly so notifies his/her Enterasys Employer, the Participant will be entitled to a refund from his/her Enterasys Employer of any excess employee contributions to the premium cost of that participation.

C.  **OUTPLACEMENT SERVICES**

Assistance in the search for new employment will be provided for Participants through the services of an outplacement firm or State Agency. Enterasys reserves the right to make the final decision as to the nature and extent of assistance to be provided and the designation or selection of the outplacement firm.

# VI. TERMINATION OF PLAN BENEFITS

Notwithstanding anything to the contrary contained in this Plan, benefits to which a Participant is entitled under Section V of this Plan shall terminate under the following circumstances:

A.  If the Participant accepts employment with Enterasys, one of the Affiliates, a Successor, a Purchaser or an Associated Employer, after qualifying for benefits under this Plan, all such benefits will cease as of the date the Participant commences such employment.

B.  All benefits under this Plan may be terminated by Enterasys in the event that it determines, in its sole discretion, that the Participant has violated any obligation to which reference is made in Section III.E of this Plan.

C.  If this Plan is terminated or amended in any way that terminates the Participant's right to receive benefits hereunder, (i) for those Participants who are not then receiving benefits under this Plan, all rights to receive benefits will cease as of the date of such termination or amendment and (ii) for those Participants actively receiving benefits under this Plan, such Participant shall continue to receive any further benefits to which they are entitled pursuant to the terms of this Plan.

# VII. GENERAL INFORMATION CONCERNING THE PLAN

D.  Enterasys and the Subsidiaries pay the full cost of benefits provided under this Plan from their general assets.

E.  Notwithstanding anything to the contrary contained herein, benefits to which a Participant is otherwise entitled under this Plan shall be reduced (a) by the amount of any benefits payable to the Participant under any contract, plan or other arrangement between a Participant and Enterasys or one of the Subsidiaries or any of the other Affiliates or a Successor, a Purchaser or an Associated Employer as a result of a termination of the Participant's employment or a change of control of

his/her Enterasys Employer or both and (b) by any other payments or benefits to which the Participant is entitled under applicable law as a result of termination of his/her employment, including without limitation any federal, state or local law with respect to plant closings, mass layoffs or group benefit plan continuation following termination or the like, but exclusive of any unemployment benefits to which the Participant is eligible under applicable law.

F.  Benefits under the Plan are not assignable or subject to alienation. Likewise, benefits are not subject to attachments by creditors or through legal process against Enterasys, any of the Subsidiaries or any employee.

G.  Notwithstanding anything to the contrary contained herein, any and all payments to be provided hereunder to or on behalf of any Participant are subject to reduction to the extent required by applicable statutes, regulations, rules and directives of federal, state and other governmental and regulatory bodies having jurisdiction over Enterasys or any of the Subsidiaries or a successor of Enterasys or any of the Subsidiaries.

H.  This Plan does not constitute a contract of employment for a specific term or otherwise alter the at-will nature of the employment relationship between any employee and Enterasys or any of the Subsidiaries.

I.  I. Enterasys shall have the right to act for and on behalf of any or all of the Subsidiaries in all matters relating to the Plan.

# VIII. INFORMATION ABOUT THE STATUS OF OTHER EMPLOYEE COMPENSATION ARRANGEMENTS AND BENEFITS AT TERMINATION

J.  **EMPLOYEE BENEFIT PLANS.**

Except as otherwise provided under Section V.B above, an Executive's participation in the Company's employee benefit plans will end as of the date the Executive's employment terminates, in accordance with the terms of those plans. Life insurance may be convertible to an individual plan. For more detailed information regarding benefits issues, the Executive should contact the Human Resources Department of his/her Enterasys Employer.

K.  **STOCK OPTIONS.**

Options to purchase Enterasys stock which are vested on the date employment terminates and which are not yet exercised, cancelled, forfeited or expired must be exercised in accordance with the terms of the applicable stock option plan and any other applicable documents, including without limitation any limits or restrictions with respect to the time in which such options may be exercised. Options to purchase Enterasys stock which have not vested on the date employment terminates are cancelled as of that date. For further information, the Executive should contact the Investor Relations Department.

L.  **PTO PAY**

An Executive will receive pay, at his or her current base rate of pay, for all PTO time accrued and unused as of the date employment terminates, as reflected on the books of his/her Enterasys Employer. Payment will be made in a lump sum, less taxes and other legally required deductions, on the last day of employment.

M.  **401(k) PLAN**

401(k) Plan contributions may not be made from severance pay.

N.  **TUITION REFUND**

Any Participant who has begun an approved course prior to a Qualifying Termination will be eligible for tuition reimbursement according to the then-current applicable tuition reimbursement policy.

# IX. DEFINITIONS

Words or phrases, which are initially capitalized or within quotation marks shall have the meanings provided in this Section IX and as provided elsewhere herein. For purposes of this Plan, the following definitions apply:

O. "Affiliates" means all individuals, corporations and other entities directly or indirectly controlling controlled by or under common control with Enterasys, where control may be by management authority, equity interest or otherwise. The Affiliates include without limitation the Subsidiaries.

P. An "Associated Employer" means any corporation or other entity in which Enterasys or any of the Affiliates has an ownership interest or with which Enterasys or any of the Affiliates is a joint venture or the like or which is a customer or supplier of Enterasys or any of the Affiliates or with which Enterasys or any of the Affiliates has a contractual relationship.

Q. "Cause" for termination means only (i) the Executive's refusal to perform, or gross negligence in the performance of, his/her duties or responsibilities for Enterasys or any of the Affiliates or (ii) the Executive's fraud, embezzlement or other material dishonesty with respect to Enterasys or any of the Affiliates or (iii) the Executive's commission of a felony or other crime involving moral turpitude.

R. "Subsidiaries" means only those corporations (1) which are incorporated within the United States and (2) are wholly owned either by Enterasys or by a wholly-owned subsidiary of Enterasys and (3) are either listed on Exhibit A of this Plan or have been expressly designated in writing by an officer of Enterasys as one of the Subsidiaries for purposes of this Plan.

# X. ADMINISTRATION, CLAIMS PROCEDURE AND GENERAL INFORMATION

S. Enterasys reserves the right to amend, modify and terminate this Plan at any time by a written instrument signed by an officer of Enterasys. There are no vested benefits under this Plan. Also, Enterasys, as the Plan administrator within the meaning of ERISA, reserves full discretion to administer the Plan in all of its details, subject to the requirements of law. Enterasys shall have such discretionary powers as are necessary to discharge its duties. Any interpretation or determination that Enterasys makes regarding this Plan, including without limitation determinations of eligibility, participation and benefits, will be final and conclusive, in the absence of clear and convincing evidence that Enterasys acted arbitrarily and capriciously.

T. If you believe you are being denied any rights under the Plans, you may file a claim in writing with Enterasys, as Plan administrator. If your claim is denied, in whole or in part, the Plan administrator will notify you in writing, giving the specific reasons for the decision, including specific reference to the pertinent Plan provisions and a description of any additional material or information necessary to perfect your claim and an explanation of why such material or information is necessary. The written notice will also advise you of your right to request a review of your claim and the steps that need to be taken if you wish to submit your claim for review. If the Plan administrator does not notify you of its decision within 90 days after it had received your claim (or within 180 days, if special circumstances exist requiring additional time, and if you had been given a written explanation for the extension within the initial 90-day period), you should consider your claim to have been denied. At this time you may request a review of the denial of your claim.

U. U. A request for review must be made in writing by you or your duly authorized representative to Enterasys, as Plan administrator, within 60 days after you have received the notice of denial. As part of your request, you may submit written issues and comments to the Plan administrator, review pertinent documents, and request a hearing. The Plan administrator's written decision will be made within 60 days (or 120 days if a hearing is held or if other special circumstances exist requiring more than 60 days and written notice of the extension is provided to you within the initial 60-day period) after your request has been received. Again, the decision will include specific reasons, including references to pertinent Plan provisions.

## EXHIBIT A

The following are designated as Subsidiaries for purposes of the Enterasys Networks, Inc. Executive Severance Pay Plan:

**SUBSIDIARIES OF ENTERASYS NETWORKS, INC. fka CABLETRON SYSTEMS, INC.**

Enterasys Insurance Company (Vermont)

Enterasys Networks Acquisition, Inc. (Delaware)

Enterasys Networks Sales & Service Inc. (Delaware)

GlobalNetwork Technology Services, Inc. (Delaware)

Network Security Wizards, Inc. (Maryland)

Locations | ©2005 Enterasys Networks, Inc. All rights reserved.    Problems with these pages? Email the webmaster directly

https://roch-www/hr/ppp/exec-severance.html    Last modified Thursday, 14-Apr-2005 12:02 EDT.

## CERTIFICATE OF SERVICE

I, Christina Nieves, hereby certify that I have on this 10th day of May 2007 served the foregoing by mailing copies thereof, postage prepaid, to the following:

Joseph S. Rosato, Esquire
The Cochran Firm
233 Broadway
New York, NY 10279

Christina Nieves